UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PERFECTING CHURCH, MARVIN WINANS**, and **CYNTHIA FLOWERS**

          Plaintiffs,

vs.

**ROYSTER, CARBERRY, GOLDMAN & ASSOCIATES, INC., MARTIN ROYSTER, SHANNON STEEL, LLOYD BANKS, TOINE MURPHY**, and **SHALAC HOLDINGS LLC**

          Defendants.

Case No. 2:09-cv-13493

Hon. Gerald E. Rosen

---

Charles E. Murphy (P28909)
Eric K. Shih (P71326)
**CLARK HILL PLC**
Attorneys for Plaintiffs
151 South Old Woodward Ave.,
Suite 200
Birmingham, MI 48009
(248) 642-9692
(248) 642-2174 (fax)
cmurphy@clarkhill.com
eshih@clarkhill.com

Todd R. Perkins (P55623)
**PERKINS & INNISS, PLLC**
Attorney for Lloyd Banks
and Toine Murphy
615 Griswold Suite 920
Detroit, MI 48226
(313) 964-1702
(313) 930-2530 (fax)
perkintr@hotmail.com

---

## PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS

Pursuant to Fed. R. Civ. P. 11, Plaintiffs Perfecting Church, Marvin Winans, and Cynthia Flowers, through their attorneys, CLARK HILL PLC, respectfully move for sanctions against Defendants Lloyd Banks and Toine Murphy and their attorneys ("Defendants"). Defendants failed to withdraw their Response to Plaintiffs' Motion for Summary Judgment after a copy of Plaintiff's Motion for Sanctions was served on Defendants on May 18, 2011, in compliance with

7088157.1 27656/130254

Rule 11(c)(2). In support of this Motion, Plaintiffs rely on the facts, law, and argument contained in the accompanying Brief in Support.

                Respectfully submitted,

                CLARK HILL PLC

By:   */s/ Eric K. Shih*
Charles E. Murphy
151 South Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 642-9692
cmurphy@clarkhill.com

Eric K. Shih
500 Woodward Ave., Suite 3500
Detroit, MI 48226-3435
(313) 965-8813
eshih@clarkhill.com

Attorneys for Plaintiffs

Date: June 9, 2011

7088157.1 27656/130254

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

PERFECTING CHURCH, MARVIN
WINANS, and CYNTHIA FLOWERS

          Plaintiffs,

vs.

ROYSTER, CARBERRY, GOLDMAN
& ASSOCIATES, INC., MARTIN ROYSTER,
SHANNON STEEL, LLOYD BANKS,
TOINE MURPHY, and SHALAC HOLDINGS LLC

          Defendants.

Case No. 2:09-cv-13493

Hon. Gerald E. Rosen

---

Charles E. Murphy (P28909)
Eric K. Shih (P71326)
**CLARK HILL PLC**
Attorneys for Plaintiffs
151 South Old Woodward Ave.,
Suite 200
Birmingham, MI 48009
(248) 642-9692
(248) 642-2174 (fax)
cmurphy@clarkhill.com
eshih@clarkhill.com

Todd R. Perkins (P55623)
**PERKINS & INNISS, PLLC**
Attorney for Lloyd Banks
and Toine Murphy
615 Griswold Suite 920
Detroit, MI 48226
(313) 964-1702
(313) 930-2530 (fax)
perkintr@hotmail.com

---

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS

7088157.1 27656/130254

## STATEMENT OF ISSUE PRESENTED

Whether the Court should grant Plaintiffs' Motion for Rule 11 sanctions, where there is no factual or legal support for Defendants' Response to Plaintiffs' Motion for Summary Judgment.

Plaintiffs answer "Yes."

Defendants answer "No."

ii

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533 (1991).

Fed. R. Civ. P. 11

Plaintiffs state the following in support of their Motion for Rule 11 Sanctions against Defendants Banks and Murphy and their attorneys ("Defendants").

## I. FACTS

Plaintiffs' Motion for Summary Judgment was filed on February 1, 2011. Defendants filed their Response to Plaintiff's Motion for Summary Judgment [Docket #94] ("Defendants' Response") on May 11, 2011. Defendants were granted multiple deadline extensions to prepare and file a response to Plaintiffs' Motion for Summary Judgment. Despite the fact Defendants were given nearly three and a half months to prepare their response, Defendants' Response is completely lacking in factual and legal support, does not include any evidence to rebut Plaintiffs' position on the relevant issues, and cites legal authority that is contrary to Defendants' own arguments.

There is no factual support for Defendants' contention that there were mere "employees" of Martin Royster. Defendants' Response, pg. 5. The documents produced by Banks and Murphy and attached to Plaintiff's Motion for Summary Judgment include copies of the Royster, Carberry, Goldman & Associates, Inc. ("RCG") operating agreement, corporate filings with the State of Michigan, and voluminous emails demonstrating Banks and Murphy's day-to-day involvement in the management and operation of RCG. There is absolutely no support for the argument that Banks and Murphy's partner or membership status in RCG, "referred to the fact that Defendants invested with Royster and RCG expecting the same rate of return Royster promised to other investors." Defendants' Response, pg. 5. To the contrary, the evidence demonstrates that Banks and Murphy were partners and members of RCG in every sense of the words—they held themselves out as RCG partners/members to investors and the State of Michigan, they referred to themselves as partners/members in communications with each other,

1

7088157.1 27656/130254

they performed all the tasks a partner/member would be expected to perform for RCG, and they held membership interests in RCG.

There is no factual support for Defendants' contention that Banks and Murphy were not involved in soliciting or securing Plaintiff's investments in RCG or that they were not involved in presentations to Plaintiffs. Defendants' Response, pg. 5. Banks and Murphy drafted RCG's marketing materials which were used to solicit RCG investors, including Plaintiffs. Copies of emails where Banks and Murphy discussed the design and content of the marketing materials and prior drafts of the marketing materials were produced by Banks and Murphy and attached to Plaintiff's Motion for Summary Judgment. The same is true regarding the "forbearance letters" Banks and Murphy drafted and sent out to RCG investors, including Plaintiffs, when RCG was no longer able to pay investors due to the collapse of its Ponzi-style scheme.

There is no factual or legal support for Defendants' argument that "whether or not the funds [from investors] were actually disbursed in the manner discussed [in Banks and Murphy's emails] remains a genuine issue of material fact." Defendants' Response, pg. 6. First, Banks and Murphy did not need to personally profit from RCG in order to be held liable under the Michigan Uniform Securities Act. Defendants' Response does not cite any legal authority to the contrary. Second, Defendants' initial disclosures included copies of checks made out to themselves. They also accepted checks from investors and signed promissory notes with certain investors on behalf of RCG. The checks and other evidence of payment have been in Defendants' possession at all relevant times. Thus, even assuming the issue of personal profit is relevant in the way Defendants have framed their issue statement, there is no factual support for Defendants' argument on this point. Third, Defendants cannot reasonably argue that they were not control

2

7088157.1 27656/130254

persons of RCG when they admit that they discussed and planned how funds from investors would be distributed to them with their partner and co-conspirator Martin Royster.

There is no factual support for Defendants' contention that, "All activities performed by Defendants were at the behest of Royster." Defendants' Response, pg. 6. The emails clearly show that Royster, Banks, and Murphy held equal roles in the management and operation of RCG. Banks and Murphy actively participated in the RCG partner meetings, actively discussed RCG's business plan, and developed strategies for soliciting additional investors. Moreover, Banks and Murphy took the lead role on many tasks, including drafting the RCG marketing materials and the forbearance letters. Banks and Murphy communicated directly with RCG investors regarding brokerage firm accounts, the "fluctuating market," and promised RCG investors "that your interest is the same on a monthly basis and that your principal is always there." Banks and Murphy thought of themselves as the "real brains" behind RCG, and discussed their leadership roles in the emails attached to Plaintiff's Motion for Summary Judgment.

As Defendants' cited legal authorities recognize, once Plaintiffs filed their Motion for Summary Judgment showing an absence of evidence to support Defendants' case, Defendants "cannot rest on [their] pleadings, but must present significant probative evidence in support of [their position] to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support [Defendants'] position will be insufficient . . . ." Defendants' Response, pg. 6 (citing *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995)). Defendants' Response fails to "present significant probative evidence" in support of Defendants' arguments, and does not even present a "mere scintilla of evidence" in opposition to Plaintiffs' Motion for Summary Judgment. Moreover, the summary judgment standards cited by Defendants for dealing with "complex,

3

difficult" issues, Defendants' Response, pp. 6-7, are irrelevant to the present case since there is nothing complex or difficult about the incontrovertible evidence demonstrating that Defendants Banks and Murphy are liable under the securities laws as primary participants and as control persons of RCG.

There is no factual or legal support for Defendants' contention that, "The exact roles of the Defendants are not clear from the allegations outlined in the Motion for Summary Judgment." Defendants' Response, pg. 8. To the contrary, Banks and Murphy's "exact role" in the business of RCG has been demonstrated through the documentary evidence, as well as the investigation conducted by Michigan's Office of Financial and Insurance Regulation. The marketing materials, which Banks and Murphy were responsible for drafting, accurately described their exact roles in RCG. Defendants cannot reasonably argue that Royster used the RCG marketing materials to mislead the Plaintiffs about the roles of Defendants, when Defendants drafted the marketing materials. Defendants' Response, pg. 8.

There is no factual or legal support for Defendants' contention that, "It is not clear yet what information Royster neglected to inform his business associates" or that "determining whether Defendants had actual or constructive knowledge of the facts giving rise to the securities claim is another genuine issue of material fact." Defendants' Response, pg. 9. There is ample evidence that Banks and Murphy knew everything Martin Royster knew about the business of RCG. There is no genuine question that Banks and Murphy knew they were taking money from investors, that they were not registered or licensed to offer and sell securities, and that their communications with RCG investors contained materially false information. The case Defendants cite in support of the "lack of actual or constructive knowledge" defense specifically states "ignorance of blue sky laws is irrelevant for purposes of the statute . . . ignorance of the

4

law is no excuse." Defendants' Response, pp. 7-8 (citing *Rzepka v. Farm Estate, Inc.*, 83 Mich. App. 702, 708-09 (1978)). Defendants cannot escape liability because they were aware of their own actions and their professed ignorance of the law is no defense. Thus, Defendants' argument on this issue is clearly not supported by their own legal authority.

Plaintiffs' counsel sent Defendants a letter with a detailed explanation of Defendants' Rule 11 violations on May 12, 2011, the day after Defendants' Response was filed. **Exhibit A**. Plaintiffs' counsel requested Defendants' counsel to immediately withdraw Defendants' Response to avoid incurring unnecessary expenses. On May 18, 2011, Plaintiffs served Defendants with a copy of their Motion for Rule 11 Sanctions. **Exhibit B**. On the same day, Defendants' counsel sent Plaintiffs' counsel an email stating that he "had the opportunity to meet at length with [his] clients," that he could not "negate" Plaintiffs' position that there was no genuine question regarding Defendants' liability, but he nevertheless "filed a response to comply with the scheduling order of the court."[1] **Exhibit C**. In a letter dated May 27, 2011, Defendants' counsel again admitted that he could not identify any non-frivolous justification for Defendants' Response or "retort" the issues raised in Plaintiff's Motion for Rule 11 Sanctions. **Exhibit D**. Despite these repeated warnings and Defendants' acknowledged inability to identify any non-frivolous grounds for opposing Plaintiff's Motion for Summary Judgment, Defendants persisted in refusing to withdraw their Response to Plaintiff's Motion for Sanctions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 11 is aimed at curbing baseless filings that abuse the judicial system and burden courts and parties with needless expense and delay. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542 (1991). Rule 11(b)

---

[1] Defendants' counsel also failed to provide a response to Plaintiffs' May 12, 2011 letter regarding their Motion for Rule 11 Sanctions by Tuesday, May 17th, as he promised in his May 12th email.

5

6

provides in relevant part: By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the defenses are warranted by exiting law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support; and (4) the denials of factual contentions are warranted on the evidence. If the Court determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c). "The sanction may consist of . . . . an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed R. Civ. P 11(c)(2).

### III. ARGUMENT

There is overwhelming evidence that Defendants' Response lacks factual and legal support, was filed for the improper purpose of harassing Plaintiffs and causing unnecessary delay, and has needlessly increased the cost of litigation for Plaintiffs. Defendants and Defendants' counsel are fully aware of the lack of support for each of the arguments in Defendants' Response. A significant portion of the documents which support Plaintiff's Motion for Summary Judgment were produced by Defendants themselves. Defendants' Response does not contain any evidence to rebut Plaintiff's allegations and does not contain any factual or legal support for Defendants' arguments. Defendants' request to proceed to trial and "fuller development of the facts" is based solely on hypothetical scenarios which are

6

completely lacking in support and contrary to all of the evidence in the case. Defendants' counsel knew or should have known through his review of Plaintiff's Motion for Summary Judgment and supporting Exhibits that Defendants' Response was frivolous and fails to meet the requirements contained in Rule 11. Among other things, Defendants' counsel could not reasonably argue that Defendants were not control persons of RCG while admitting that Defendants discussed how to split funds from investors amongst themselves, or that Defendants' "exact roles" were not accurately described in the marketing materials Defendants were responsible for drafting. Defendants' counsel has admitted in his correspondence to Plaintiffs' counsel that there is no support for Defendants' Response. **Exhibits C & D**. Nevertheless, Defendants continue to refuse to withdraw their improper filing, based on nothing more than an unsubstantiated blanket denial of fault. Under these circumstances, Defendants' counsel should have refrained from filing Defendants' Response, or should have immediately withdrawn the filing upon receiving notice of the grounds for Plaintiffs' Motion for Rule 11 Sanctions.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs Perfecting Church, Marvin Winans, and Cynthia Flowers respectfully request the Court to grant their Motion for Rule 11 Sanctions, order Defendants Lloyd Banks, Toine Murphy, and Defendants' counsel to pay Plaintiffs' attorneys' fees incurred as a result of Defendants' Rule 11 violation, and grant Plaintiffs such other relief as the Court deems appropriate.

                Respectfully submitted,

                CLARK HILL PLC


                By:    */s/ Eric K. Shih*
                        Charles E. Murphy
                        151 South Old Woodward Ave., Suite 200
                        Birmingham, MI 48009
                        (248) 642-9692
                        cmurphy@clarkhill.com

                        Eric K. Shih
                        500 Woodward Ave., Suite 3500
                        Detroit, MI 48226-3435
                        (313) 965-8813
                        eshih@clarkhill.com

                        Attorneys for Plaintiffs

Date: June 9, 2011

8

7088157.1 27656/130254

## **CERTIFICATE OF SERVICE**

I state that on June 9, 2011, the foregoing paper filed with the Court via the ECF system which will send notification to all attorneys of record.

>By: */s/ Eric K. Shih*
>Eric K. Shih (P71326)
>500 Woodward Ave., Suite 3500
>Detroit, MI 48226-3435
>(313) 965-8813
>eshih@clarkhill.com
>Attorneys for Plaintiffs

7088157.1 27656/130254