**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PERFECTING CHURCH, MARVIN
WINANS, and CYNTHIA FLOWERS

                Plaintiffs,        No. 09-cv-13493
                                            Hon. Gerald E. Rosen

vs.

ROYSTER, CARBERRY, GOLDMAN &
ASSOCIATES, INC., MARTIN ROYSTER,
SHANNON STEEL, LLOYD BANKS,
TOINE MURPHY, and SHALAC
HOLDINGS LLC

                Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**I. INTRODUCTION**

This claimed violation of § 451.810 of the Michigan Uniform Securities Act ("MUSA") is presently before the Court on the motion of Plaintiffs Perfecting Church, Marvin Winans, and Cynthia Flowers ("Plaintiffs") for partial summary judgment against Defendants Lloyd Banks ("Banks") and Toine Murphy ("Murphy"). Having reviewed the parties' motions, briefs, and supporting documents, the Court has determined that oral argument is not necessary. Accordingly, the Court will decide Plaintiffs' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.

**II. BACKGROUND**

This case stems from a series of investments made with Royster, Carberry, Goldman & Associates ("RCG") in 2007 and 2008. RCG billed itself as a financial services company that

specialized in commodity futures contracts, particularly gold and oil, and employed Martin Royster, Shannon Steel, Lloyd Banks, and Toine Murphy in various capacities. RCG claimed to manage over $200,000 in assets after only four months of operation and guaranteed that investors' principal would remain safe while accruing reliable returns. Based on these inducements, Plaintiffs collectively invested $504,171.04 with RCG.

In exchange for their capital investments, RCG issued a series of promissory notes to Plaintiffs. Plaintiffs also received periodic account statements showing the amount of interest their investments had supposedly accumulated. Contrary to outward appearances, however, RCG's investment portfolio was speculative at best. In November 2008, Plaintiffs attempted to cash out their accounts, seeking the principal invested and all purportedly accrued interest. Instead, RCG issued a letter stating that it lacked the funds to fulfill Plaintiffs' requests, and procured Plaintiffs' forbearance in exchange for a promise to make monthly payments of $20,000 until Plaintiffs recovered their investments.

Despite repeated demands for payment, Plaintiffs have yet to recover any money from RCG. Plaintiffs subsequently filed the instant action on June 7, 2010 alleging eight counts against six Defendants. Before the Court is Plaintiffs' motion for partial summary judgment. Specifically, Plaintiffs seek a finding that Banks and Murphy violated either § 451.810(a)(1) or § 451.810(b) of MUSA.

### III. ANALYSIS

A.    **Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).[1]  "[A] party seeking summary judgment always bears the initial responsibility of informing the [Court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citations omitted).  "[T]his burden can be satisfied by demonstrating to the district court that there is no evidence underlying the nonmoving party's case." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

In deciding a motion brought under Rule 56, the Court views the evidence in the light most favorable to the nonmoving party.  *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006).  Yet, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion[.]"  Fed. R. Civ. P. 56(e)(2).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     Michigan Uniform Securities Act Standard**

Plaintiffs' motion for partial summary judgment seeks a determination that Banks and Murphy violated either of two provisions in § 451.810 of MUSA.  Mich. Comp. Laws

---

[1] Amendments to Rule 56 became effective December 1, 2010.  Since Plaintiffs filed their summary judgment motion on February 1, 2011, the amended version of the Rule controls.  While the parties cite to the earlier rule in their briefs, the legal standard has not changed.  Fed. R. Civ. P. 56 Advisory Committee Notes (2010 Amendments) ("The standard for granting summary judgment remains unchanged.").

3

§§ 451.810(a)(1), (b) (2003).[2] Section 451.810(a) creates a cause of action against any seller of securities who violates § 451.601(a) or § 451.701 of MUSA. *Id.* § 451.810(a)(1). The former forbids transacting business as a broker-dealer or agent without registering as such. *Id.* § 451.601(a) ("A person shall not transact business in this state as a broker-dealer or agent unless registered under this act."). The latter makes it unlawful for any person to offer or sell a security unless the security is registered, exempted, or covered by federal securities law. *Id.* § 451.701 ("It is unlawful for any person to offer or sell any security in this state unless [one] of the following is met: (1) it is registered under this act; (2) the security or transaction is exempted under section 402; (3) the security is a federally covered security.").

MUSA does not limit liability to those directly involved in offering or selling securities in violation of the relevant provisions, however. The statute extends liability for the conduct listed above to

> [e]very person who directly or indirectly controls a seller liable under [§ 451.810(a)], every partner, officer, or director of the seller, every person occupying similar status or performing similar functions, [and] every employee of the seller who materially aids in the sale . . . unless the person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist.

*Id.* § 451.810(b). Purchasers of securities that run afoul of MUSA thus have recourse both to the person from whom the securities were bought as well as individuals in control of the seller in question. This broad scope of liability accords with the purpose of MUSA: "prevent[ing]

---

[2] Michigan comprehensively overhauled its Uniform Securities Act effective October 1, 2009. *See* Mich. Comp. Laws § 451.2702. Plaintiffs, however, filed their initial complaint September 3, 2009, and the complaint is based on conduct occurring prior to October 1, 2009. The new Act specifically states that "[t]he predecessor act exclusively governs all actions, prosecutions, or proceedings that are pending or may be maintained or instituted on the basis of facts or circumstances occurring before the effective date of this act . . . ." Mich. Comp. Laws § 451.2703(1) (2009). Therefore, the predecessor legislation governs this case.

stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings . . . ." *People v. Breckenridge*, 263 N.W.2d 922, 926 (Mich. Ct. App. 1978).

A full understanding of the parties and conduct covered by MUSA requires reference to a number of statutory definitions. MUSA defines "sale" or "sell" to include "every contract of sale of, contract to sell, or disposition of a security or interest in a security for value" and "offer" or "offer to sell" as "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." *Id.* § 451.801(v)(1)-(2). The term "security" includes any note or evidence of indebtedness as well as, more broadly, any contractual or quasi-contractual arrangement that meets the following conditions:

> (1) a person furnishes capital, other than services, to an issuer;
> (2) a portion of that capital is subjected to the risks of the issuer's enterprise;
> (3) the furnishing of that capital is induced by the representations of an issuer, promoter, or their affiliates which give rise to a reasonable understanding that a valuable tangible benefit will accrue to the person furnishing the capital as a result of the operation of the enterprise;
> (4) the person furnishing the capital does not intend to be actively involved in the management of the enterprise in a meaningful way; and
> (5) a promoter or its affiliates anticipate, at the time the capital is furnished, that financial gain may be realized as a result thereof.

*Id.* § 451.801(z). Broker-dealer "means any person engaged in the business of effecting transactions in securities for the account of others or for his or her own account." *Id.* § 451.801(d). Agent "means any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." *Id.* § 451.801(c).

5

**C.     The Court Cannot Conclude as a Matter of Law that Banks or Murphy Violated § 451.810(a)(1).**

Plaintiffs assert that Banks and Murphy's role in RCG constituted a violation of § 451.810(a)(1) either because Banks and Murphy sold unregistered securities, or because Banks and Murphy sold securities in an unregistered capacity. *Id.* §§ 451.601(a), 451.701(1).[3] As explained below, Plaintiffs have failed to produce sufficient evidence to demonstrate that either Banks or Murphy violated § 451.810(a)(1) as a matter of law.

As an initial matter, the Court is convinced that RCG sold MUSA-covered securities as a broker-dealer both to Plaintiffs as well as others. RCG acted as a broker-dealer because it effected transactions in securities for the accounts of its clients. *Id.* § 451.801(d). MUSA makes clear that "security" includes any note or evidence of indebtedness, *id.* § 451.801(z), and Plaintiffs' uncontroverted evidence contains client profiles and a number of promissory notes issued by RCG, (Pls.' Mot. for Partial Summ. J. Ex. 4 at 3-5; Ex. 15 at 2-10). Other uncontested evidence further establishes that RCG, Banks, and Murphy were not validly registered to sell securities in the State of Michigan, and that the securities sold were not registered in the State of Michigan either. (Pls.' Mot. for Partial Summ. J. Ex. 6 at 2; Ex. 13 at 1-3, 6-7.) Despite these supporting documents, however, the record does not establish that Plaintiffs "bought" their securities "from" Banks or Murphy as required under MUSA. *See* Mich. Comp. Laws § 451.810(a) ("Any person who does either of the following is liable to the person <u>buying</u> the security <u>from</u> him . . . .") (emphasis added).

In determining whether Plaintiffs bought their securities from Banks or Murphy, *Mercer v. Jaffe, Snider, Raitt & Heuer, P.C.*, 713 F. Supp. 1019 (W.D. Mich. 1989), is instructive. In

---

[3] Section 451.701 requires that securities offered for sale meet one of three conditions: registration, exemption, or federal regulation. Mich. Comp. Laws § 451.701(1)-(3). Since neither party contends that exemption or federal regulation applies, the Court will only consider the registration prong of § 451.701. *Id.* § 451.701(1).

6

*Mercer*, the court considered and rejected federal securities law claims against attorneys who had done little more than prepare promotional materials for a securities seller. The court rejected the claim against the attorneys because the statute attached liability to sellers of securities only, and the plaintiff had not purchased securities from the attorneys *per se*: "buyers commonly do not say that they purchased securities from lawyers or law firms that helped to prepare promotional material or offering statements." *Mercer,* 713 F. Supp. at 1024. Rather, liability required a closer connection to the purchase at issue.

The *Mercer* holding was largely based on the Supreme Court's interpretation of language from federal securities law that closely resembles the language in § 451.810(a). *See id.* at 1023-24 (citing *Pinter v. Dahl*, 486 U.S. 622 (1988)).[4] In *Pinter*, the Supreme Court held that statutory language requiring the plaintiff-purchaser to have "purchased" a security "from" the defendant-seller includes both the direct seller and the solicitor of the sale, but not other, more attenuated parties. 486 U.S. at 644-51, 651 n.27 (1988) (rejecting liability for persons who, *inter alia*, were "substantial factors" in a security sale and persons who merely "participate in soliciting the purchase"). Liability for the sale of securities required a "purchase" from the defendants, and the "soundest interpretation of the term . . . is as a correlative to both 'sell' and 'offer,' at least to the extent that the latter entails active solicitation of an offer to buy." *Id.* at 645. Section 451.810(a) also limits liability to the person from whom securities are bought. Mich. Comp. Laws § 451.810(a). Since these terms are best understood in light of their common

---

[4] While the *Pinter* and *Mercer* opinions considered § 12 of the Securities Act of 1933, 15 U.S.C. § 77l, rather than MUSA, the two statutes use similar language, and "Michigan courts refer to federal securities law in interpreting . . . MUSA." *In re Trade Partners, Inc. Investors Litigation*, 07-MD-1846, 2008 WL 3875396, at *18 (W.D. Mich. Aug. 15, 2008) (citing *Michelson v. Voison*, 658 N.W.2d 188, 190 (Mich. Ct. App. 2003); *Michigan v. Breckenridge*, 263 N.W.2d 922, 927 (Mich. Ct. App. 1978)). In particular, both statutes create a cause of action for the person who purchased or bought a security from someone offering or selling the same. *Compare* 15 U.S.C. § 77l(a), *with* Mich. Comp. Laws § 451.810(a).

7

usage, liability under § 451.810(a) requires finding that Banks or Murphy played an active role in Plaintiffs' purchase of securities. *See Pinter*, 486 U.S. at 644-45; *Mercer*, 713 F. Supp. at 1024. Therefore, to maintain liability under § 451.810(a) of MUSA, Plaintiffs must establish that Banks or Murphy did more than merely participate in the solicitation of Plaintiffs' purchase; Plaintiffs must have bought their securities from Banks or Murphy as those terms are commonly understood. *See Pinter*, 486 U.S. at 651 n.27.

Plaintiffs have submitted a significant amount of evidence detailing Defendants' collective exploits as securities brokers, including promissory notes, brochures, bank statements, client profiles, and internal emails detailing RCG's operations. However, Plaintiffs have not produced sufficient evidence to demonstrate that Plaintiffs "bought" their securities "from" Banks or Murphy for purposes of § 451.810(a). Some of Plaintiffs' evidence makes progress toward Plaintiffs' position, but the evidence is insufficient to meet the summary judgment standard. First, the RCG brochure lists Banks and Murphy as "Senior Partners" of the company, but does nothing more to suggest that Plaintiffs in fact bought their securities from Banks or Murphy as those terms are generally used. (Pls.' Mot. for Partial Summ. J. Ex. 14 at 6.) Mere affiliation with RCG does not bring Banks and Murphy within the ambit of individuals from whom Plaintiffs can be said to have bought their securities. Rather, Martin Royster and Shannon Steel, the individuals who made an investment presentation to Plaintiffs, are more appropriately seen as the parties from whom Plaintiffs bought their securities. (Pls.' First Am. Compl. ¶¶ 26-27; Pls.' Mot. for Partial Summ. J. 6.) Banks and Murphy may have participated in the solicitation of Plaintiffs' purchase in some unknown way, but allegations without substantiation are insufficient under Rule 56. *See Celotex Corp.*, 477 U.S. at 323. Second, while Murphy's signature as maker on at least seven promissory notes may well suggest that the payees on those

8

notes "bought" their securities "from" Murphy, (Pls.' Mot. for Partial Summ. J. Ex. 5 at 9, 12, 15, 19, 24, 27, 31, 35), Martin Royster alone signed the promissory notes issued to Plaintiffs, (Pls.' Mot. for Partial Summ. J. Ex. 4 at 5; Ex. 15 at 4, 7, 10).

Plaintiffs' brief underscores the Court's conclusion: whereas Plaintiffs single out the conduct of specific Defendants at particular points in their pleading, (*see, e.g.,* Pls.' Mot. for Partial Summ. J. 5-7), Plaintiffs resort to blanket statements about the Defendants collectively insofar as the actual sale of securities is concerned, (*see, e.g., id.* at 13-15). When Plaintiffs do make Defendant-specific allegations regarding their securities purchases, Plaintiffs focus on Martin Royster and Shannon Steel, the RCG employees who made the presentation that led to Plaintiffs investing with RCG. (*Id.* at 6.) It is not clear from the pleadings or evidence that Plaintiffs even had direct contact with Banks or Murphy at any time during the investment period at issue here. Therefore, viewing the evidence in the light most favorable to Banks and Murphy, the Court cannot conclude that Plaintiffs bought their securities from Banks or Murphy as a matter of law. *See* Mich. Comp. Laws § 451.810(a).

## D. The Court Can Conclude as a Matter of Law that Banks and Murphy Violated § 451.810(b).

In the alternative, Plaintiffs allege that Banks and Murphy violated § 451.810(b) of MUSA, which extends liability for the unregistered sale of securities to "[e]very person who directly or indirectly controls a [liable] seller[,] . . . every partner, officer, or director of the seller, [and] every person occupying similar status or performing similar functions" unless that person can show that they did not know, and could not have known through reasonable care, the facts giving rise to liability. Mich. Comp. Laws § 451.810(b). For the reasons that follow, the Court

9

concludes that Banks and Murphy violated § 451.810(b) as a matter of law and no dispute of material fact exists. *See* Fed. R. Civ. P. 56(a).

As discussed above, the assertions and uncontested evidence proffered by Plaintiffs establishes that there is no dispute as to any material fact regarding RCG's violation of § 451.810(a)(1). RCG sold securities[5] to Plaintiffs, (Pls.' Mot. for Partial Summ. J. Ex. 4 at 5; Ex. 15 at 4, 7, 10); RCG was not registered as a broker-dealer in the State of Michigan, (Pls.' Mot. for Partial Summ. J. Ex. 6 at 2; Ex. 13 at 1-3; Ex. 22 at 24); and RCG's securities were not registered in the State of Michigan, (*id.*). Therefore, RCG has violated § 451.810(a)(1) under both formulations alleged by Plaintiffs. All that remains is establishing that Banks and Murphy meet the description set forth in § 451.810(b).

It is clear from the evidence submitted that Banks and Murphy controlled RCG and were partners at RCG for purposes of MUSA. Banks and Murphy claim that they were mere employees of RCG. (Pls.' Mot. for Partial Summ. J. Ex. 22 at 16.) The Court, however, is unconvinced. Murphy himself signed at least seven promissory notes to investors and listed his title as "Senior Partner/Sales" on each. (Pls.' Mot. for Partial Summ. J. Ex. 5 at 9, 12, 15, 19, 24, 27, 31, 35.) This comports with the brochure discussed earlier, which lists Banks and Murphy as "Senior Partners" at RCG. (Pls.' Mot. for Partial Summ. J. Ex. 14 at 6.) Moreover, it seems

---

[5] Banks and Murphy contend that "it remains an issue for a fact finder to determine whether or not the investments offered by Royster through RCG were 'securities' within the meaning of MUSA." (Defs.' Resp. to Pls.' Mot. for Partial Summ. J. 9.) This argument is unavailing. Aside from Banks and Murphy's failure to offer any substantive argument on point, the definition of "security" under MUSA clearly encompasses the promissory notes issued to Plaintiffs by RCG. (*See* Pls.' Mot. for Partial Summ. J. Ex. 4 at 5; Ex. 15 at 4, 7, 10.) Furthermore, the investments solicited by RCG also meet the five-element test outlined in § 451.801(z): Plaintiffs furnished capital to RCG; the capital was subjected to the risks of RCG's enterprise; the capital was induced by representations made by Royster with the understanding that a valuable benefit would accrue to Plaintiffs; Plaintiffs did not intend to be actively involved in the management of RCG; and Royster anticipated that financial gain would be realized as a result of Plaintiffs furnishing capital. (*See* Pls.' Mot. for Partial Summ. J. Ex. 14.)

10

highly unlikely that a company would give low-level employees authority to issue high-value promissory notes on behalf of the company.

A number of internal emails further confirm Banks and Murphy's self-proclaimed status as RCG partners. An October 23, 2007 email between Banks, Royster, and Murphy–subject line "Recap from recent Partners Meeting – Skyline Club on Monday, October 22"–repeatedly refers to the parties involved as partners in the organization. (Pls.' Mot. for Partial Summ. J. Ex. 9 at 1) (emphasis added.) The email states in three separate provisions that "we committed as partners" to various endeavors and goes on to mention that "Lloyd will work with George to review all pieces to put partnership in place[.]" (*Id.*) An email dated April 8, 2007 from Banks to Royster and Murphy is addressed to "Partners" as well. (Pls.' Mot. for Partial Summ. J. Ex. 20 at 23.) Finally, in a July 14, 2008 email from Banks to Murphy, Banks includes a draft message for clients whose investments had disappeared and signs the client missive as "Senior Partner, Operations." (Pls.' Mot. for Partial Summ. J. Ex. 21 at 145-46.)

Furthermore, to the extent Banks and Murphy contest their role in controlling RCG, a January 12, 2008 email from Banks to Murphy and Royster confirms the pivotal role Banks and Murphy played in RCG's operations. The email, titled merely "RCG," outlines five substantial priorities for the organization, including generating capital, revising promotional materials, wiring $400,000 to an account, additional market trading, and maintaining day-to-day operations. (Pls.' Mot. for Partial Summ. J. Ex. 11.) Each entry indicates who is charged with the specified duty: Banks is tasked with three and Murphy is listed for the other two. (*Id.*) Banks and Murphy thus played a critical role in the management and control of RCG. Most importantly, Banks and Murphy make no attempt to rebut any of the evidence discussed above.

The Court is thus justified in treating the facts alleged by Plaintiffs and amply supported by their evidence as undisputed. Fed. R. Civ. P. 56(e)(2).

Banks and Murphy do, however, make three claims in an attempt to escape liability. First, Banks and Murphy claim that "[Royster] alone approached [Plaintiffs] to invest with RCG." (Defs.' Resp. to Pls.' Mot. for Partial Summ. J. 5.) As discussed earlier, this may well be the case. Nonetheless, it is a factual dispute that is "irrelevant or unnecessary" to the Court's finding under § 451.810(b), where the issue is control over the seller instead of involvement in the purchase. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Second, in response to a November 7, 2007 email where the parties propose making substantial payments to themselves out of client funds, (Pls.' Mot. for Partial Summ. J. Ex. 10), Banks and Murphy assert that whether the payments in fact occurred is an issue of disputed fact, (Defs.' Resp. to Pls.' Mot. for Partial Summ. J. 6, 9). Banks and Murphy may be right, but whether the payment occurred is irrelevant to the determinations at issue here. *Anderson*, 477 U.S. at 248. No part of § 451.810 requires finding that Banks or Murphy personally profited from RCG's investment scheme. The Court thus declines to reach the issue here.

Last–and most importantly–Banks and Murphy claim that they did not know the facts giving rise to RCG's liability. *See* Mich. Comp. Laws § 451.810(b). Despite this claim, however, Banks and Murphy fail to offer any analysis or cite any evidence in support of this defense. Furthermore, Banks and Murphy do not address the second half of the § 451.810(b) defense: Banks and Murphy do not claim that the facts giving rise to RCG's liability were unknowable, the exercise of reasonable care notwithstanding, as § 451.810(b) requires. Bare and incomplete assertions can neither create disputes of material fact nor undermine conclusions of law. *See* Fed. R. Civ. P. 56(e).

12

While Banks and Murphy contest their status as partners at RCG, they fail to cite any part of the record or Plaintiffs' brief to show that a genuine dispute exists. *See* Fed. R. Civ. P. 56(c)(1)(A)-(B). In other words, there appears to be "no evidence underlying the nonmoving party's case." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). As Rule 56 states, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the Court may "consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). Therefore, given the substantial and uncontested evidence and assertions put forth by Plaintiffs, the Court concludes that no factual dispute exists, and that Plaintiffs are entitled to judgment as a matter of law on Count IV of their complaint against Banks and Murphy. Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

For the reasons stated in this opinion, the Court finds that Banks and Murphy did not violate § 451.810(a)(1) of the Michigan Uniform Securities Act. The Court further finds that Banks and Murphy violated § 451.810(b) of the Michigan Uniform Securities Act.

THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Dkt. #70] is GRANTED.

                                                    s/Gerald E. Rosen
                                                    Chief Judge, United States District Court

Dated: September 22, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 22, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther

Case Manager (313) 234-5137